820 So.2d 758 (2002)
Randy S. WALL a/k/a Randy Shane Wall, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01939-COA.
Court of Appeals of Mississippi.
June 25, 2002.
Tom Sumrall, Crestview, FL, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
EN BANC.
LEE, J., for the court.

MODIFIED OPINION ON MOTION FOR REHEARING
¶ 1. We grant Wall's petition for rehearing. The original opinion issued in this case is withdrawn, and the following opinion is substituted as the opinion of this Court.

*759 PROCEDURAL HISTORY
¶ 2. In February 1997, the appellant, Randy S. Wall, was indicted by a Harrison County Circuit Court grand jury on one count of attempted rape and two counts of sexual battery. After a trial, Wall was convicted on all counts and was sentenced to serve twenty years imprisonment on each count without the possibility of parole with said sentences to run concurrently. He thereafter filed a motion for new trial, arguing new evidence had surfaced which required that he receive a new trial; the motion was denied. Aggrieved, he now appeals to this Court. As herein described, we reverse and remand for a new trial.

FACTS
¶ 3. The incident in question took place in June 1996 at the home of Wall's sister, Rhonda Martin. Wall and several others, including fifteen-year-old A.B.[1] who was there babysitting, were socializing at Martin's home on that evening. The facts are in dispute as to the exact events of the evening, but A.B. claims that at some point, she went to the bathroom and Wall followed her and attempted to expose himself to her. A.B. also claims that she was later forced to accompany Wall back to his apartment. Once there, Wall forced her into his apartment, forced her to his bedroom at knife point and then attempted to rape her. A.B. claims that she resisted to the point that Wall abandoned his efforts at intercourse and, instead, forced A.B. to perform oral sex on him.
¶ 4. Wall objected to A.B.'s recollection of the events. He admitted that he left his sister's home and went back to his apartment, but he recounts that A.B. volunteered to accompany him. He claimed that once they arrived at his apartment, he went inside to do a few tasks, and then he and A.B. left without incident.

DISCUSSION

I. DID THE TRIAL COURT ERR IN DENYING WALL'S MOTION FOR NEW TRIAL?
¶ 5. Wall raises arguments both concerning the sufficiency of the evidence and the erroneous denial of his motion for new trial; however, we only address the motion for new trial as we find this presents grounds for reversal and remand for a new trial. Concerning motions for new trial, our standard of review states:
In reviewing the decision of the trial court on a motion for a new trial, this Court views all of the evidence in the light most consistent with the jury verdict. A motion for a new trial addresses the weight of the evidence and should only be granted to prevent an unconscionable injustice.
Daniels v. State, 742 So.2d 1140 (¶ 11) (Miss.1999) (citations omitted). Additionally, Rule 10.05 of the Uniform Circuit and County Court Rules describes the prerequisites for granting a new trial:
The court on written motion of the defendant may grant a new trial on any of the following grounds:
1. If required in the interests of justice;
2. If the verdict is contrary to law or the weight of the evidence;
3. Where new and material evidence is recently discovered which would probably produce a different result at a new trial, and such evidence could *760 not have been discovered sooner, by reasonable diligence of the attorney;
4. If the jury has received any evidence, papers or documents, not authorized by the court, or the court has admitted illegal testimony, or excluded competent and legal testimony;
5. If the jurors, after retiring to deliberate upon the verdict, separated without leave of court; and
6. If the court has misdirected the jury in a material matter of law, or has failed to instruct the jury upon all questions of law necessary for their guidance....
URCCC 10.05.
¶ 6. In his motion for new trial, Wall cites two major new pieces of evidence he claims warrant ordering a new trial. First, he argues that Robert Haskins, who lived adjacent to Wall's apartment the evening of the alleged incident, would testify that he heard no screams nor any ruckus of any kind from Wall's apartment that night, which would contradict A.B.'s recollection of the events. Second, Wall claims that Jessica Wall, A.B.'s cousin, who was nine years old at the time of her testimony at the hearing on the motion for new trial, would testify that after the trial A.B. told Jessica she lied about Wall raping her. Wall claims that these two testimonies are "new evidence" which were not discovered until after the trial. This Court's recent case of Witherspoon v. State, 767 So.2d 1065 (Miss.Ct.App.2000), is instructive in this situation.
¶ 7. In Witherspoon, the defendant was convicted of manslaughter, and after the trial another witness came forward to contradict the other witnesses' recollection of the events. Witherspoon, 767 So.2d at (¶ 3). Although the trial court reviewed this and other evidence and did not find grounds for granting a new trial, this Court on review recognized a Georgia case as persuasive authority.
Witherspoon directs our attention to Humphrey v. State, 207 Ga.App. 472, 428 S.E.2d 362 (1993). He contends this Georgia case supports his proposition. In Humphrey, the victim of a rape told a friend a version of the rape that differed in material respects from the testimony given at trial. The friend was not known to the defense prior to trial and came forth after Humphrey's conviction. The appellate court granted a new trial because the testimony tended to support Humphrey's theory of the case.
The case sub judice is easily distinguishable from Humphrey. It does not take much imagination to see how a different version as to how an alleged rape occurred, told by the victim herself to a friend who did not have credibility problems, would likely impact the jury's verdict if that version differed substantially from the one told at trial. In our case, Isaac's version of the facts, while potentially explaining some of the unanswered questions, does not rise to the stature of a rape victim giving contradictory versions of what occurred during an alleged rape.
Witherspoon, 767 So.2d at (¶¶ 13-14) (citations omitted) (emphasis added). We closely consider the newly discovered testimony of A.B.'s cousin, Jessica Wall. Jessica recalled that she was approximately five years old at the time she claims A.B. told her "she had made up a lie about my Uncle Randy, and that she didn't want me to be mad at her, and the only reason she did [was] because she was mad at my mother." Jessica testified at the hearing on the motion for new trial that she did not tell anyone what her cousin A.B. had told her, and she only told her grandmother later, "because she probably wanted me to tell her if I had known something about *761 what had happened so I just told her and maybeshe just said she didn't know I knew this, and she said thank you for telling me.... I didn't know that my Uncle Randy was in court or nothing. I just had found out." Jessica had no credibility problems, and her testimony certainly would likely have impacted the jury's decision, especially when bolstered by neighbor Haskins' testimony as well as the testimony of A.B.'s stepfather who also said A.B. had told him she lied about the event. According to the Humphrey rule as cited in Witherspoon, this new revelation of Jessica's testimony was sufficient to warrant a new trial. We reverse and remand for a new trial.
¶ 8. THE JUDGMENT OF THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF HARRISON COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL. COSTS OF THIS APPEAL ARE TAXED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] The victim was a minor at the time of the alleged incident, and we use initials to protect her identity.